DANIEL W. HALL *vs.* THE UNITED STATES INSURANCE COMPANY OF BALTIMORE, FOR THE USE OF THE RECEIVERS OF SAID COMPANY.—*December,* 1847.

Where an original subscriber to the stock of an incorporated company, bound to pay the instalments upon his subscription, from time to time, as they were called in by the company, transfers his stock to another, with his assent, such other person is substituted to the rights and obligations of the original subscriber, and bound to pay up instalments called for, after the transfer to him.

Payment of instalments, by a transferree of stock, is evidence of his assent to the transfer to him.

When the charter of a company declares that no stockholder, indebted to the company, shall be permitted to transfer his stock, until his debt be paid or secured to the satisfaction of the directors: this is a privilege which may be waived or asserted, at the pleasure of the president and directors.

Instalments upon subscriptions to stock not called in are not within the meaning of such a clause. It relates to debts due and payable in *presenti,* not in *futuro.*

A transfer of stock on the books of an incorporated company, is merely to pass it to the transferree, and is as good between the parties, if made without consideration, as if made with it. It does not profess to disclose the consideration which induced it, nor the terms of the contract from which it emanates, and of which it is the consummation.

Proceedings in equity against an insolvent corporation, to have receivers appointed, and unpaid instalments, due from corporators collected—the court appointed them with orders to coerce payment. In an action at law against a delinquent stockholder, such proceedings are evidence against him, though not a party to the bill, for the purpose of showing by what authority the action was prosecuted.

Stockholders in chartered companies, bound to pay instalments as called for upon notice from such companies, are affected by notices published in the newspapers where the companies transact their business. They cannot require personal notice, and where receivers are appointed to collect the sums due from them, they possess the powers of the directors of such companies, as given by their charters in such cases, both as to time of payment, and amounts called in.

The substitution of such newspaper publications, in lieu of personal notice, has so long been an universal usage, and of a notoriety equal to that of newspapers themselves, that the custom of doing so has become a part of the law of the land.

An order of court which directed receivers to give sixty days notice, by advertisement in three of the newspapers printed in the city of *B.,* to all the stockholders of, &c. to pay the remaining instalments due on their stock respectively, and that if they fail to pay according to said notice, the said receivers

Hall *vs.* U. S. Insurance Co.—1847.

shall proceed forthwith to coerce the payment of the same by suit, is not to be interpreted as requiring them to call for the *whole* amount of unpaid instalments upon sixty days notice, but leaves to the receivers the power of fixing the amount of instalments called for, in conformity with the provisions of the charter of any such company.

Where the defendant prays the court to instruct the jury that the plaintiff is not entitled to recover, the grounds assigned for that instruction must be co-extensive with the plaintiff's right, as established by the proof, or it is not error to refuse it.

To claim a right of discount or set-off, is not an obligation or duty on the part of him who is entitled to it. He may waive or assert it at his election. Having once waived it, and thereby obtained a dividend out of the effects of his debtor, to which, neither at law nor in equity, would he otherwise have been entitled, he will not afterwards be permitted to assert his claim by way of discount or set-off. To suffer him to do so, would, in contemplation of law, if not in fact, be practising a fraud upon the other creditors of his debtor.

APPEAL from *Baltimore* County Court.

This was an action of *Assumpsit*, commenced on the 31st August, 1837, by the *U. S. Insurance Company*, against the appellee. All errors of pleading were waived by consent.

It was agreed by the parties in this cause that the plaintiff may give in evidence, on the trial of this action, any facts or circumstances which would be admissible upon any special declaration, or count in a declaration, that the evidence to be offered would legally authorise; and that the defendant under the general issue of *non assumpsit* may give in evidence any matters which he could or might do upon any special plea, or account or matter in bar, or by way of off-set, and that either party upon the trial may object to the competency of any evidence, and raise and have the benefit of any points or questions of law that might have been raised by demurrer, or otherwise, in any stage of the pleadings, or upon trial upon any issues that might have been lawfully made or joined upon any state of the pleadings ; and that it is admitted that the defendant held, as owner, the policies issued by the *United States Insurance Company*, the plaintiff at the time of its failure, and before the thirty-first day of May, 1834, numbered 1243, 1243, 948, 1055, 1486, and 1154, and that he has ever since continued to hold the same

to this time, and that they were duly presented for payment at the office of said company when due.

1st Exception.—Upon the trial of this cause, the plaintiffs, to support the issue on their part, read in evidence the act of Assembly of *Maryland* creating the plaintiffs a body corporate, passed at December session, 1831, chap. 191, and the following agreement for subscription to the stock of said corporation:

" We, whose names are hereunto subscribed, do promise to pay to the president and directors of the *United States Insurance Company of Baltimore* the sum of twenty dollars for every share of stock in the said company set opposite to our respective names, agreeably to an act of the State of *Maryland*, entitled An act to incorporate the *United States Insurance Company of Baltimore*." Witness our hands this fifteenth day of March, eighteen hundred and thirty-two.

Which, it is admitted, was signed by *Joseph P. Grant*, for one hundred shares of the stock of said company. And further read in evidence the certificate of election of directors of said corporation.

*United States Insurance Company of Baltimore,*
*Baltimore*, March 31*st*, 1832.

The undersigned commissioners, having given the public notice required by the charter, on this day held an election, between the hours of 10 o'clock A. M. and 1 o'clock P. M., for eight directors, to serve for the ensuing year, when, upon counting the ballots, the following gentlemen were found to be duly elected: *Peter Neff, &c.*

And gave in evidence that the said corporation was after the agreement or subscription of said stock organized agreeably to the requirements of said act of incorporation. And also offered in evidence the following instrument of writing, purporting to be a transfer of said one hundred shares of stock to the defendant, in form following, to wit:

" I hereby transfer to *D. W. Hall* an hundred shares of stock now standing in the name of *Joseph P. Grant* on the books of

the *United States Insurance Company of Baltimore.* Witness my hand this 12th day of July, 1832. *Joseph P. Grant.*"

And offered in evidence, by *Joshua J. Atkinson,* a competent witness, that after the date of said transfer the said defendant paid several instalments on said one hundred shares of stock, that were called for by the president and directors of said company.

The defendant objected to the reading of said instrument of writing, purporting to be a transfer, as incompetent and inadmissible as evidence to prove that the said defendant, by virtue thereof, become the owner of said stock, or a stockholder in said company, notwithstanding the said defendant paid several instalments after the time of said supposed transfer, because the said *Grant,* by virtue of the said agreement or subscription for said stock, and by virtue of the act of Assembly aforesaid, became a stockholder debtor to said company for the whole sum of twenty dollars upon each and every of said shares, including the nine dollars upon each of said shares sought to be recovered in this action; and because, by the provisions of the ninth section of said act of Assembly, no stockholder, indebted to the company, is permitted to make a transfer or receive a dividend until such debt be paid, or secured to the satisfaction of the president and board of directors of said company ; and, furthermore, because there is no consideration expressed in said supposed transfer, for the making thereof. Which objection the court (Le Grand, A. J.) overruled, and admitted the aforesaid instrument of writing in evidence. The defendant excepted.

In addition to the facts stated in the foregoing exceptions, and which, it is agreed, shall form part of this

2ND EXCEPTION. The plaintiffs, further to prove the issue on their part, offered to read in evidence the following proceedings in *Baltimore* county court, in equity, in a certain cause wherein *William H. Stump* is complainant and the *United States Insurance Company* aforesaid is defendant, viz :

"Ordered by the court this 24th May, 1834, that injunction issue, as prayed upon the complainant's filing bond, with security to be approved by the judges of this court, in the penalty of

twenty thousand dollars, to .indemnify the defendants against all
costs and damages from said injunction. And it is further or-
dered by the court, that the defendants shew cause on Tuesday
next at 10 o'clock, why a receiver should not be appointed to
take charge of all the effects of the defendants, and administer
the same according to justice and equity, provided a copy of
this order be served on the president of the said company, or
on the board of directors of said company, or left at the office
for doing business of said company, before 3 o'clock of this
day. Signed, S. ARCHER, R. B. MAGRUDER, JOHN
PURVIANCE, Judges of *B*. C. C.

And also the following petition :
*To the Honorable, the Judges of Baltimore*
*County Court, in Equity:*

The petition of *Harman Stump*, of *Harford* county, sheweth
to your honors, that he heretofore filed his bill of complaint in
this honorable court, against the *United States Insurance Com-*
*pany of Baltimore*, and that upon the prayer contained in that
bill, your honors appointed *James Harwood*, *John B. Howell*
and *Walter Farnandis*, receivers of the estate and effects of
said company, as will be seen by reference to said bill of com-
plaint, and the proceedings now therein remaining of record, in
this court. Your petitioner further shews, that the former
president and directors of said company, to wit, *Peter Neff*,
*Job Smith*, *John Patterson*, *John A. Hamilton* and *Joseph P.*
*Grant*, were each holders of a large amount of the stock of
said company, on which there was, and still is due to said
company, unpaid instalments to a large amount, and that said
president and directors, when they knew said company was
insolvent, and when too, that insolvency had been produced by
their management, assigned and transferred their stock to irre-
sponsible persons, for the purpose of exempting themselves
from liabilities for the unpaid instalments of said stock, and in
fraud of your petitioner and the other creditors of said compa-
ny. Your petitioners further shew, that all the stockholders
of said company, owe to said company nine dollars, on
each share of stock, and that by the act of incorporation, said

stockholders are entitled to a notice for sixty days, previous to the time at which the unpaid instalments can be demanded. That said company is insolvent, and that all its effects and estate, together with the unpaid instalments due on its stock, is wholly insufficient to pay its debts. Wherefore, your petitioners pray your honors will direct and order said receivers to institute suits against said president and directors, for the unpaid instalments on said stock so fraudulently assigned as aforesaid, and to give notice to all other stockholders and persons, liable to pay the unpaid instalments on said stock, to pay the same. And upon their failure to do so, to institute suits for the recovery of the same. And your petitioners, &c.

On the foregoing petition it is ordered by the court, this 26th June, 1834, that the aforesaid receivers institute suit against the president and directors therein named, as prayed, and that the receivers aforesaid, give sixty days notice, by advertisement, in three of the newspapers printed in the city of *Baltimore,* to all the stockholders of the said *Insurance Company,* (except said president and directors,) to pay the remaining instalments due on their stock respectively. And it is further ordered, that if said stockholders fail to pay, according to said notice, that said receivers forthwith proceed to coerce the payment of the same by suit, unless said receivers shew cause to the contrary, on or before Tuesday next. Provided a copy of this order be served on or before Saturday next. R. B. MAGRUDER,
JOHN PURVIANCE.

And it is further agreed, that the persons named as receivers in said proceedings were duly appointed and qualified to act as such.

To the reading of all and every part of which proceedings the defendant objected as incompetent and inadmissible, because they are proceedings in equity and in a case still pending; and because the defendant was not a party to said cause in equity, nor to any of said proceedings. Which objection the court overruled, and admitted the aforesaid proceedings in evidence. The defendant excepted.

3RD EXCEPTION. In addition to the facts stated in the afore-going exceptions, which are agreed shall form part of this, the plaintiffs then further offered in evidence the following notices, having proved that they were published in three newspapers in the city of *Baltimore.*

"Office of the Receivers of the *United States Insurance Company of Baltimore,* (*South* street,) June 30th, 1834."

" By virtue of an order of *Baltimore* county court, notice is hereby given to the stockholders of the *U. States Insurance Company of Baltimore,* that an instalment of one dollar on each share of the capital stock of said company is required to be paid to the receivers on or before the first day of September next, and that an additional instalment of two dollars on each share of said stock is required to be paid on or before the first day of October next, and also an instalment of two dollars on each share of said stock on or before the first day of November next.

By order of the Receivers of the *U. S. I. Co.*

July 3rd, 1834.            *G. W. Atkinson,* Secretary."

Another notice was published on 17th October, 1834, requir-ing the stockholders to pay an instalment of four dollars on each share of stock standing in their respective names, by virtue of and in compliance with an order of *Baltimore* county court, and proof of their publication was also given.

To the admission of which notices the defendant objected, as incompetent and inadmissible evidence to charge, or *affect,* the defendant as notices required by the terms of the second section of said act of incorporation, and because they were not made by the president and directors of said company, or by their au-thority, and because said notices are not sufficient legal notices to charge the defendant.

But the court overruled the objection, and admitted the said notices in evidence. The defendant excepted.

4TH EXCEPTION.—In addition to the facts stated in the fore-going exception, and which it is agreed shall form part of this, the plaintiffs further offered in evidence the following proceed-ings, signed by the president and four directors of said cor-poration, viz:

*Baltimore*, 24th June 1837. At a meeting of the directors, held this day, at which the undersigned directors were present, it was resolved, that the president cause notice to be given through the public papers, to the stockholders of this company, to pay up the balance of the stock remaining unpaid, in the following instalments, viz : Five dollars on the 26th day of August, and four dollars on the 26th day of October, to be paid to Mr. J. J. Atkinson, at the office of the Receivers of the company. Signed, *Hugh Birckhead, President U. S. Ins. Co. James Harwood, George H. Newman, John Kettlewell, Philip J. Dawson.*

And proved the publication thereof.

To the admission of all which notices the defendant objected, as incompetent and inadmissible to charge or affect him with a liability to pay any one of the instalments therein called for; which objection the court overruled, and admitted the aforesaid proceedings in evidence. The defendant excepted.

5TH EXCEPTION.—In addition to the facts stated in the foregoing exceptions, which is agreed shall form part of this, the defendant, to support the issue on his part, and to bar a recovery by the plaintiff, read in evidence to the court and jury, by way of discount in bar or off-set, the following short copy of a judgment, obtained in *Baltimore* county court on the 2nd February, 1837, by *Daniel W. Hall* (the defendant in this action,) against the *United States Insurance Co. of Balto.*, (the plaintiff in this action,) with a statement of the amount due thereon, and on oath of said Hall, as a probate annexed:

DANIEL W. HALL *vs.* THE UNITED STATES INSURANCE COM-
PANY OF BALTIMORE.—In *Baltimore* county court, January
Term, 1837.

Debt, nar, &c. 2nd February 1837, judgment by confession for $1,000 debt, and $500 dam's in nar and costs. Damages to be released on payment of interest on debt from 11th August 1834, and costs. Writ issued 30th August, 1834. Plaintiff's costs, $10 13½.

I hereby certify that the foregoing is a true short copy of the

judgment, taken from the record of proceedings of said court in the above cause. And I further certify that there is no entry or proceeding in said court to shew that said judgment has been satisfied.

In testimony whereof, I hereto set my hand and affix the seal of *Baltimore* county court, this first of June, eighteen hundred and forty-six.

(Seal's place.)        *A. W. Bradford*, Cl'k *Balto.* Co'ty Co't.

*Statement of the amount due on the above mentioned judgment:*

| | |
|---|---:|
| To the principal debt, . . . . . | $1,000 00 |
| To interest thereon from 11th Aug. 1834 to 20th Octo. 1841, . . . . . . | 431 50 |
| | 1,431 50 |
| And costs, . . . . . . . | 10 13 |
| | 1,441 63 |
| 1841, Octo. 20, Credit by cash, . . . | 120 00 |
| | 1,321 63 |
| Int. on $1,321 63 until 1st June, 1846, . . | 365 85 |
| Amount due, . . . | 1,687 48 |

And proved, by the record of said court, that the action in which said judgment was rendered was instituted on the 30th August 1834, and the cause or causes of said action, upon which said judgment was rendered, were two policies or writings obligatory, for the payment, to bearer, of $500 each, duly executed by the *United States Insurance Company* aforesaid, and sealed with its corporate seal, both dated the 4th April 1834, and numbered 1243, and payable, one on the 4th, and the other on the 11th August 1834, the *form* of which policies is as follows:

        $210\frac{02}{100}$.                                $210\frac{02}{100}$.

Policy No. 1053. In consideration of securities deposited and of the premium paid thereon, the *United States Insurance*

*Company of Baltimore* guarantees to the bearer, the payment of the sum of two hundred ten $\frac{92}{100}$ dollars, on the 18th August 1834, on presenting this policy for payment, at their office. *Baltimore*, Jan'y 29, 1834.

   *G. W. Atkinson*, Sec'y.      *Peter Neff*, Pres't.

And also read in evidence, by way of discount in bar or set-off, three other like policies of said company, sealed with its seal, of the several numbers, and for the several amounts and dates, and payable or due at the respective times as follows, viz: one policy No. 1053, dated Jan. 29th 1834, due Aug. 18th 1834, for $210 92; one policy No. 1086, dated Feb. 11th 1834, due Sept. 1st 1834, for $139 93, and one policy No. 1154, dated March 1834, due May 14th 1834, for $102 95. And it was and is admitted, that the said *Daniel W. Hall* was the bona fide holder and owner of all of said policies, including those upon which the said judgment was rendered when the said company failed, and before the proceedings in equity aforesaid were instituted, and before the said receivers were appointed, and has continued ever since, such holder and owner of the same. And it was further admitted, that a dividend was declared by order of court of the assets received by said receivers, as appears by the proceedings in the equity case aforesaid, and that said *Hall* received of the receivers a dividend of twelve per cent. upon each of the said claims, so offered by way of discount in bar or off-set.

The defendant prayed the opinion and direction of the court to the jury, as follows: that the plaintiff is not entitled to recover upon the evidence in this action.

1. Because, upon the evidence, the law does not imply any *assumpsit* on the part of the defendant to pay any of the instalments called in after the said receivers were appointed.

2. Because the said court had no jurisdiction or power as a court of equity, in said equity cause, to determine that the defendant should pay any of the unpaid instalments upon said one hundred shares of stock subscribed for by said *Grant* being a part, viz: nine dollars per share upon such of said shares, unpaid and uncalled for at the time when the said receivers were

appointed, nor to determine when they should be paid, nor any jurisdiction or power to authorize the said receivers to call in and collect of the defendant, or sue him for any of said instalments, this power having been vested exclusively in the president and directors of said company by the act or charter of its incorporation, read in evidence by the plaintiffs, and because the said *Grant* was and is the only person responsible (if any person is responsible,) to pay those instalments, by virtue of his original express agreement, and promise to pay the same by the terms of his subscription, as prescribed by said charter, and is in fact made by him, which precludes any implied *assumpsit* on the part of the defendant to pay the said instalments, or any part thereof. And furthermore, because the said court as a court of equity destroyed, or essentially and materially impaired the considerations and benefits that might accrue to the defendant as a stockholder, by assignment of said stock from said *Grant*, under the provisions and franchises of said charter.

3. That the instalment of $2 per share called for by the receivers and made payable on the 1st October, 1834, could not be lawfully made payable on that day, it being only thirty days after the day on which a prior instalment was by them made payable.

4. Because the decree and proceedings in the case of *Stump* vs. *the United States Insurance Company of Baltimore*, put an end to all power of the president and directors of said company to call for the instalments, which are the subjects of the advertised notice on the part of said president and directors given in evidence, while the said decree remains in force.

5. Because the receivers appointed by the decree above referred to are not lawfully entitled to call for and receive the instalments mentioned in the public notices in evidence, notwithstanding the order of *Baltimore* county court, in said cause, authorizing the call and collection of the said instalments, there being no evidence of the instalments, or of any of them, having been called for by the president and directors, and having become payable before the appointment of receivers as aforesaid.

6. Because the proceedings and order of *Baltimore* county

court, given in evidence, do not, nor do any of them, estop the defendants from maintaining in this action that the said court had no authority to direct said receivers to make the calls for the instalments, for recovery of which this action is brought.

7. Because the said order of *Baltimore* county court, directs the total amount of the instalments payable on the stock to be called for upon sixty days notice, contrary to the charter given in evidence, which allows no larger amount than five dollars upon such period of notice at any one time to be called for, while the testimony and claim of the plaintiffs, in this cause shew that the amount of unpaid instalments was nine dollars at the date of said order, and of the filing of the petition whereon it was passed.

8. Because the said order of *Baltimore* county court has not, in respect of the notice thereby directed, been complied with, inasmuch as by the showing of the plaintiffs the notice for one of the instalments was, for the first time, published on the third day of July, in the year eighteen hundred and thirty-four, and required payment of said instalment on the first day of the next ensuing September; and because said notice was not sufficient in that it was published only (daily) four times during the period between the third day of July, 1834, and said 1st day of September.

9. Because said order had not been complied with, inasmuch as it required, according to the due construction thereof, that one payment of all the said instalments should be made, and that the amount of all should be comprehended in a notice or notices for one and the same day of payment, while the evidence shows that said entire amount was divided into several sums, and called for by separate notices for said several sums respectively to be paid on different days respectively.

10. Because there is no evidence of personal notice to the defendant of the call for any of the instalments claimed in this case.

11. Because the contract given in evidence for payment of the instalments on the stock subscribed by the defendants is

with the president and directors of the company and cannot be sued upon by the plaintiffs.

12. Because the order of the president, and of the directors, given in evidence, was signed and passed by only four directors and the president of the corporation, the number of directors being eight as prescribed by the charter; and there being no evidence of notice to all the directors to attend the meeting at which said order was passed, and not more than the said four directors and the president appearing to be present at said meeting.

13. And that the plaintiffs cannot recover in this cause the instalment of four dollars mentioned in the notice of 24th June, 1837, from the president and directors of said company, because the sum is made payable on the 26th October, 1837, and the present suit was instituted on 31st August, 1837.

14. And the defendant thereupon further prayed the opinion and direction of the court to the jury, that the defendant is entitled to the benefit of the balances due on said judgment and policies read in evidence, by way of discount, or set-off against the claim of the plaintiff in this action, notwithstanding the defendant did receive from the receivers, on the twentieth day of October, 1841, a dividend of twelve per cent. upon the principal sums of said policies, including those upon which said judgment was founded; and, furthermore, that the plaintiff is not entitled to recover if the jury find that the sum of money due on said judgment and on said policies, including interest, is equal to or greater than the amount of money which the jury may find due from the defendant to the plaintiff, upon the evidence in this action. All which prayers and directions contained in this 6th exception of the defendant, the court refused to grant, but granted the following prayer, on the part of the plaintiff.

The plaintiff prayed the court's opinion to the jury, that if they find, from the evidence, that the defendant became the owner of 100 shares of the stock of the *U. S. Ins. Co.* by regular transfer from original subscribers for such shares, and if they also find that the defendant, after so becoming the owner

of such shares, paid, as duly called for, the instalments due on each of said shares, except the two instalments sued for in this case, and if they find that said two instalments were called for, under the authority and in the manner stated in the plaintiff's evidence, and if they also find that the proceedings in equity were had, as also given in evidence by plaintiff and the receivers appointed under the same, duly qualified according to the terms of the decree or under it in said case, that then the defendant is not entitled, by way of set-off, or discount, to have set-off or discounted from plaintiff's said claim, either the judgment or the policies he has given in evidence; provided the jury shall find that defendant came in under said equity proceedings, in said equity case, and made claim for and obtained a dividend upon his said judgment and policies out of the assets claimed and distributed in said case. To which refusal and opinion of the court as to all the prayers or points of defendant, as also to its opinion and direction in granting the plaintiff's *said* prayer, the defendant excepted.

The defendant appealed to this Court.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, MAGRUDER and MARTIN, J.

By HINCKLEY, for the appellant and

By REVERDY JOHNSON, for the appellee.

DORSEY, J., delivered the opinion of this court.

The suit before us was instituted to recover certain instalments on the stock of the *United States Insurance Company.* And to show the defendant's liability for the payment thereof, after proving that *Joseph P. Grant* was an original subscriber for one hundred shares of the stock of the company, the plaintiff below gave evidence of the following transfer thereof to the defendant below, to wit:

"I hereby transfer to *D. W. Hall* an hundred shares of stock,

63    v.5

now standing in the name of *Joseph P. Grant* on the books of the *United States Insurance Company of Baltimore.*

  Witness my hand this 12th day of July, 1832,

  Witness present, *J. J. Atkinson.*       *Joseph P. Grant.*"

And to prove the defendant's assent to the transfer thus made to him, the plaintiffs gave evidence by *Joshua J. Anderson,* a competent witness, that after the date of said transfer, the said defendant paid several instalments on said one hundred shares of stock, that were called for by the president and directors of said company. Whereupon the said defendant objected to the reading of said instrument of writing, purporting to be a transfer, as incompetent and inadmissible as evidence to prove that the said defendant, by virtue thereof, became the owner of said stock, or became a stockholder in said company; notwithstanding, the said defendant paid several instalments after the time of said supposed transfer, because the said *Grant,* by virtue of the said agreement or subscription for said stock, and by virtue of the act of Assembly aforesaid, (meaning the charter of the company) became a stockholder debtor to said company for the whole sum of twenty dollars upon each and every of said shares, including the nine dollars upon each of said shares sought to be recovered in this action; and because, by the provisions of the ninth section of said act of Assembly, no stockholder indebted to the company, is permitted to make a transfer or receive a dividend until such debt be paid, or secured to the satisfaction of the president and board of directors of said company; and furthermore, because there is no consideration expressed in said supposed transfer for the making thereof. Which objection the court overruled and the defendant excepted.

  Was the county court right in so doing is the question involved in the defendant's first bill of exceptions?

The appellant insists that there is error in the county court's decision, because *Grant,* by subscription for the stock, became a debtor to the company for the sum of twenty dollars on each share of the stock, which included the amount for which suit had been instituted against him. But there is nothing in this objec-

tion. The transfer of the stock having been duly made to him; and he having assented thereto, as is unequivocally demonstrated by his payment of instalments subsequently called in by the president and directors of the company, he was, in respect to said stock, substituted to all the rights and liabilities which would have attached to *Grant*, had he continued the owner thereof, and no such transfer had ever been made. And there is quite as little weight in the appellant's second reason, assigned in support of his objection, founded on the ninth section of the act of Assembly of 1831, ch. 191, which declares, that no stockholder indebted to the company shall be permitted to transfer his stock, until such debt be paid or secured to the satisfaction of the president and board of directors.

The object of this section was to confer a privilege, not to impose an imperative duty, upon the company. Being a privilege, it might be waived or asserted, at the pleasure of the president and directors. And the transfer having been by them permitted, it was as valid and obligatory upon the appellant, as if no such indebtedness had existed. But suppose the ninth section of the act were to be construed, not as conferring a privilege, but as imposing a duty. Instalments not called in, constituted no such indebtedness as was contemplated by the act of Assembly. It contemplated only a *debitum, solvendum* in *presenti,* not in *futuro.* To give to the charter of the company the construction contended for by the appellant, would be to render its stock wholly untransferrable, until the par amount of it had been paid up. Although the requisite instalments for that purpose had never been called in by the president and directors.

And there is still less foundation for the third reason urged to sustain the appellant's objection to the testimony offered, viz : because there is no consideration expressed in said supposed transfer, for the making thereof. It is as good, *inter* parties, if made without consideration, as if made with it. The only office of the transfer is to pass the stock to the transferree. It professes not to disclose the consideration which induced it ; or the terms of the contract from which it emanates ; and

of which it is the consummation. There is, therefore, no error in the ruling of the court below, in the first bill of exceptions.

Neither is there any error in the court's overruling the objection of the appellant to the testimony offered by the appellee in the second bill of exceptions. The proceedings of *Baltimore* county court when sitting in equity, which were objected to as evidence, were not offered as an adjudication of any of the rights of the parties in any suit between them, and upon that ground as admissible evidence in the present controversy; but were offered, without reference to the parties thereto, for the purpose of shewing by what authority the present action was prosecuted. In that aspect of their being offered, they are obnoxious to neither of the reasons urged for their rejection. The court's order for the institution and prosecution of this suit was definite and final. As to the power exerted by *Baltimore* county court, sitting in equity, in the proceedings before it, it is believed no well-founded exception can be taken. It was indispensably necessary for the prevention of fraud; and to do justice to persons whose grievances were undeniable and incapable of relief any where else, or in any other way, than in that pursued by the county court. In such a case, and under such circumstances, it cannot be necessary to cite authorities to establish the propriety of the exercise of such a power. The county court then committed no error in overruling the objection taken by the appellant to the testimony offered by the appellee in the second bill of exceptions.

On the third bill of exceptions, the appellant has insisted that the county court in overruling his objection to the testimony offered by the appellee, erred upon three grounds: first, because by the second section of the act of 1831, ch. 191, no call for the payment of any instalment on the stock of the company was legal, unless made by the president and directors thereof. Secondly, that a notice for the payment of such instalments must be personal notice, and that no newspaper publication thereof was sufficient. And thirdly, that the notices given by the receivers were insufficient, because by the provisions of the company's charter, sixty days must intervene

between the times for the payment of each instalment. Having asserted the legality of the proceedings of the county court in assuming the jurisdiction, which it sought to exercise through the instrumentality of receivers, it follows as a necessary consequence, that under the court's order of the 26th June, 1834, the receivers had the same power to determine on the times of payment, and the amount of the instalments called in, that the president and directors of the company possessed, when uncontrolled by any intervention of the county court upon the subject.

In support of the second ground of objection: that the notice for the payment of the instalments must be personal; and that no newspaper publication thereof is sufficient. No authorities have been referred to; and there is nothing in the act of Assembly to induce a belief that it contemplated or required such notice to be personal. On the contrary, there is every reason to induce the adoption of a contrary opinion. The act of Assembly provides for the subscription of ten thousand shares of stock; amongst how many persons they may be distributed, not even a conjecture could be formed: they may have amounted to thousands. Of their respective residences there is equal, if not greater uncertainty, the law making no provision for a registry thereof, which it certainly ought to have done, had such personal notice been deemed necessary. And there is no proportionate object attained for the great inconvenience, labor, and expense, incident to such a notification, conceding it to be practicable. Persons who are stockholders in such a corporation are not inattentive to the concerns thereof, and obtain information in relation to its proceedings either through their own inquiries or the communications of friends resident at or near its office of business, or from publications in newspapers edited in its vicinity. The substitution of such newspaper publications in lieu of personal notice, has so long been an universal usage, and of a notoriety equal to that of the publication of newspapers themselves, that the custom of doing so has become a part of the law of the land.

It is true that in many of the charters of such corporations, there are express provisions for the publication of newspaper notices. But such provisions are rather to be regarded as declaratory of what the law is, and ought to be, than innovations upon it. In the very charter before us, some such newspaper notices have been provided for; but there is nothing to be found in it, which induce even a momentary belief, that the legislature omitted to prescribe such a notice in the section now under consideration, in order that a personal notice might be given to each individual stockholder. The third reason assigned for the rejection of the testimony offered in this bill of exceptions, cannot be sustained without interpolating into the charter, a provision which it does not contain. It no where prescribes any length of time which shall intervene between the times for the payment of any of the instalments. That is a matter left entirely to the judgment and discretion of the president and directors. The only restriction imposed upon them, (in reference to instalments) for the benefit of the stockholders, is, that they shall be notified of their amount and time of payment, sixty days before the payment is required. No error is perceived in the ruling of the court in the third bill of exceptions.

The opinion expressed on the third bill of exceptions supersedes all necessity for the expression of any opinion on the defendant's fourth bill of exceptions.

In the fifth bill of exceptions, the defendant having offered in evidence by way of set-off, a judgment by him obtained against the plaintiff and three policies of the *United States Insurance Company,* and that he had been the *bona fide* holder of those claims before and ever since the failure of the company, and having admitted that, at a dividend made by the receivers of the assets of the company subsequently to the time when all the instalments called in by the receivers were payable, he had received a dividend of twelve per cent. on the full amount of his said claims, prayed the opinion and direction of the court to the jury, as follows: that the plaintiff is not entitled to recover upon the evidence in this action. And in support of his

prayer, assigned twelve separate reasons: the first, second, third, fourth, fifth, sixth, tenth and eleventh have been disposed of, and their insufficiency as the basis for the prayer predicated upon them, sufficiently shown by the preceding portion of this opinion.

The seventh ground on which the defendant claimed the granting of his prayer was: " because the said order of *Baltimore* county court directs the total amount of the instalments, payable on the stock, to be called for upon sixty days notice, contrary to the charter given in evidence, which allows no larger amount than five dollars upon such period of notice, at any one time to be called for, whilst the testimony and claim of the plaintiff in this cause shew, that the amount of unpaid instalments was nine dollars at the date of said order." Upon this ground, the appellant's prayer was properly refused, being founded in a misconception of the order of the court, which did not direct that all the instalments, which the receivers were to call for, should be made payable at one and the same time: but that sixty days notice should be given to the stockholders previously to the time of the required payment of the instalments, and leaving to the receivers the power of fixing the amount of the instalments called for, in conformity to the provisions of the charter. Such appears to have been the receiver's interpretation of the court's order; and their proceedings under it were designed to be in strict accordance both with it, and the charter.

The eighth reason is: " because the said order of *Baltimore* county court has not, in respect of the notice thereby directed, been complied with, inasmuch as by the showing of the plaintiffs, the notice for one of the instalments, was, for the first time, published on the third day of July, in the year eighteen hundred and thirty-four, and required payment of said instalment on the first day of the next ensuing September: and because said notice was not sufficient, in that it was published only (daily) four times during the period between the third day of July, 1834, and said first day of September." As to the first branch of this reason, however, it might be a bar to

the plaintiff's recovery of the first instalment, the payment of which was required on the first of September; it assuredly formed no bar to the recovery of the three other instalments, the payment of which was fixed for the first day of October, the first day of November, and twenty-second day of December: and consequently was no warrant for the granting of the prayer made to the court. The second branch of the reason interposed no barrier to the plaintiff's right to recover. The notice given, as respects the mode of publication in the newspapers, was a sufficient compliance with the order of the court, and the requisition of the charter; and, of course, in no wise sustained the prayer addressed by the appellant to the court.

The ninth reason assigned for the granting of the appellant's prayer is sufficiently answered and obviated, in what has been said upon the seventh reason.

The twelfth reason was abandoned by the appellant in the argument of this cause.

The defendant below, after enumerating the twelve grounds upon which he claimed the court's opinion and direction to the jury, that the plaintiff was not entitled to recover; with a view to obtain an additional opinion and direction from the court to the jury, makes the following addition to his prayer:

"And that the plaintiff cannot recover in this cause the instalment of four dollars, mentioned in the notice of 24th June, 1837, from the president and directors of said company, because it is made payable on the 26th of October, 1837, and the present suit was instituted on the 31st of August, 1837. Had this prayer been granted by the court, it is manifest that it would have been regarded by the jury, as, in fact, it would have been, a direction to them, that the plaintiff was not entitled to recover more than five of the nine dollars due on each of the hundred shares of stock, owned by the defendant. Such an opinion the court below could not have given to the jury, consistently, with the views herein before expressed as to the legality and sufficiency of the notices previously given by the receivers. In refusing this addition to the prayer of the appellant, the court below committed no error.

The only remaining prayer of the defendant below, in the fifth bill of exceptions, is in the record, numbered fourteen, and presents for our consideration the single question, whether the appellant after, in common with all other creditors, receiving from the receivers a dividend of twelve per cent. on the entire amount of his claim against the company, can be permitted to set off the balance due to him against the claim of the appellee in the present action?

This suit was instituted in the year 1837, and the dividend was declared and paid in the year 1841. That the defendant understood the nature of the dividend declared: that he made known to the receivers the amount of the company's indebtedness to him, on which he claimed his dividend, cannot well be doubted; because three out of the five policies of the company on which that indebtedness arose were payable to bearer: and the receivers, in the nature of things, must have been apprized of his being the holder thereof, through some communication from himself. Indeed, it is a natural inference, that to justify and protect themselves, they must have required an exhibition of the policies by him, who claimed a dividend on account thereof. To claim a right of discount or set-off, is not an obligation or duty on the part of him who is entitled to it. It is his privilege, which he may waive or assert at his election. But having once waived it, and thereby obtained a dividend out of the effects of his debtor, to which, neither at law nor in equity, would he have otherwise been entitled, he will not afterwards be permitted, either in a court of law or of equity, as a matter of right, to assert his claim by way of discount or set-off. To suffer him to do so, would in contemplation of law, if not in fact, be practising a fraud upon the other creditors of his debtor. And this may be briefly illustrated by a supposititious statement, entirely analogous to the case before us.

Suppose the claim of the company against the defendant was $1,000, and that of the defendant against the company, $1,150; upon the principles of discount or set-off, the actual indebtedness of the company would be $150; the dividend of twelve per cent., on which is $18, and that is all that the de-

fendant could justly claim or receive under the dividend as made by the receivers. But instead of thus preferring his claim, he waives his right of set-off, and prefers his entire claim of $1,150, and receives a dividend of $138, instead of $18; that is $120 more than upon any principle of set-off, he had even the shadow of a claim upon the funds in the hands of the receivers. The county court were clearly right in refusing this prayer of the defendant. This view of the question renders it unnecessary to inquire into the general right of set-off, if no such dividend has been received by the appellant.

The granting of the prayer of the appellee would necessarily follow, from what has been said in relation to the prayers made by the appellant.

Concurring in all that has been done in this case by the county court, its judgment should be affirmed.

JUDGMENT AFFIRMED.