BACHELDER, (UNITED STATES v.) See Case No. 14,490.

## Case No. 707.

### In re BACHMAN.

[12 N. B. R. 223; 2 Cent. Law J. 119; 22 Int. Rev. Rec. 19.]

District Court, W. D. Missouri. 1876.

CORPORATIONS—STOCK—TRANSFER—INDEBTEDNESS ON SUBSCRIPTION.

[1. A by-law of a corporation, that no transfer of stock shall be made or allowed by any stockholder who at the time is indebted to the corporation, merely attaches a condition to the right of property in the stock for the better security of corporate creditors, and does not conflict with the Missouri law which declares personal estate to be transferable in the manner prescribed by law, even if it be construed to prohibit the assignment of stock while part of the subscription remains unpaid.]

[See Brent v. Bank of Washington, Case No. 1,834; In re Dunkerson, Id. 4,156; Mechanics' Bank v. Seton, 1 Pet. (26 U. S.) 299.]

[2. An unpaid subscription to stock, for which the subscriber has executed notes to the corporation, is a debt, within the meaning of a by-law which prohibits the transfer of stock by a stockholder who is indebted to the corporation.]

[3. When such a by-law is in force, the officers or directors of the corporation cannot, as against creditors of the corporation, relieve a stockholder from liability on his unpaid subscription by registering a transfer of the stock, and delivering up the notes of the stockholder for the subscription.]

[See National Bank v. Watsontown Bank, 105 U. S. 217.]

[4. A statutory provision that "no shares shall be transferred until all previous calls shall have been fully paid in" does not prevent the corporation from further limiting the right of transfer by a by-law that no transfer shall be made while the stockholder is indebted to the corporation.]

[5. Under an assignment of stock which authorizes an officer of the corporation to make the necessary transfer on the books of the corporation, the officer is the agent of the assignor, in making the transfer, and not of the corporation; and any laches on his part in executing it is chargeable to the assignor, and not to the corporation.]

[In bankruptcy. Suit by the assignee in bankruptcy of Bachman to recover the balance due on a stock-subscription. On demurrer to answer. Sustained.]

Karnes & Ess, for plaintiff.

Johnson & Botsford and Gage & Ladd, for defendant.

KREKEL, District Judge. The assignee in bankruptcy brings this his suit to recover of defendant six thousand dollars, balance of stock subscription of seven thousand five hundred dollars, on which two payments, one of seven hundred and fifty dollars, prior to organization, and another of seven hundred and fifty dollars, on call after organization, had been made. The petition is in the usual form, declaring on balance of subscription. The answer is, that on the 9th day of Novem-

ber, 1871, the defendant sold and assigned to one Keefer, sixty-five shares of the stock by him held (on which twenty per cent. had been paid, twenty-two dollars and sixty-six cents per share); that he assigned the certificate in due form, and that the transfer was duly entered upon the books of the bank; that Keefer at the time of the sale and transfer was solvent, and that defendant did not make the sale to avoid any responsibility on his part to the bank: that at the time of said transfer on the books of the bank, he received the notes which he had executed for his stock to the bank, to the amount of six thousand five hundred dollars, and therefore claims that he is discharged from any liability to the bank on account of said subscription to the extent of six thousand five hundred dollars. As to the remaining ten shares, the answer sets up a similar assignment to Tobener, who was president of the bank, but does not allege that the assignment and transfer were entered upon the books of the bank (but alleges knowledge on the part of the bank of the assignment), and avers that the remainder of his stock notes were delivered up. This last assignment was made on the 10th day of February, 1873, is alleged to have been bona fide and for value, and that Tobener was then and is now solvent, and therefore claims to be discharged of any liability on account of these ten shares. The bank was declared bankrupt on the 12th of April, 1873.

To this answer a demurrer is interposed, assigning for causes, that the assignments and transfers set up constitute no defense as to the sixty-five, nor ten shares of stock, because the defendant at the time of making the assignment and transfers was indebted on stock subscription to the bank, and that being so indebted, he could not make a valid assignment and transfer, on account of a by-law prohibiting it, so long as he was indebted to the bank. As to the ten shares, the demurrer assigns in addition to the indebtedness, that the transfer was never made on the books of the company. This bank was organized under the general incorporation act of the state of Missouri, containing this provision, among the enumerated powers of organization under it: "To make by-laws not inconsistent with existing law, for the management of its property, the regulation of its affairs, and for the transfer of its stock." One of the by-laws of the bank provides as follows: "Certificates may be assigned by indorsement on the back, but no transfer of stock shall be valid except when made upon the books of this bank, on return of said certificate, and no transfer shall be made or allowed by any stockholder who at the time is indebted to the bank. Stock may be transferred by the owner or by a legally authorized agent." The reasons assigned by defendant why this by-law does not apply to the case before the court, are, that stock subscription is not a debt within its meaning;

that if it is, the officers of the bank had a right to, and have waived it, and that the construction contended for by plaintiff would make the stock unassignable while not fully paid up, thus coming in conflict with the law of the state which declares its personal estate transferable in the manner prescribed by the laws of the company; "but no shares shall be transferred until all previous calls shall have been fully paid in." 1 Wag. St. p. 292, § 16.

The stock certificates of the bank are as follows: "Kansas City, Mo., Feb. 12, 1870. This certifies that Q. A. Bachman is the owner of —— shares of the capital stock of the Union German Savings Bank, of Kansas City, Mo., transferable only on the books of said bank, in accordance with the by-laws thereof, in person or by attorney, on the surrender of this certificate. P. W. Ditsch, President. Signed. John S. Harris, Cashier." On the back of said certificate there was a printed blank form for the transfer thereof, in words and figures as follows: "For value received —— hereby sell, transfer, and assign —— shares of stock within mentioned, authorize the cashier of said bank to make the necessary transfer on the books of the bank. Witness —— hand and seal, this —— day of ——, 187-. ——." [Seal.] The answer regarding the assignments alleges that these blanks were properly filled when assignments and transfers were made.

Chief Justice Waite in Pollard v. Bailey, [20 Wall. (87 U. S.) 520,] says that "the individual liability of stockholders in a corporation, for the payment of its debts, is always a creature of the statute. At common law it does not exist." We must then look to the statutes of Missouri to determine the liability of the defendant. As the question mainly turns upon the by-law regarding transfers of stock, while stock subscription remained unpaid, the first inquiry is: Does it conflict with any law of the state if it is construed to prohibit assignment of stock, while part of the subscription for it remained unpaid?. The supreme court of Missouri has said, that even if such by-law did conflict with the general law governing transfer of property in this state, it is valid. St. Louis Perpetual Ins. Co. v. Goodfellow, 9 Mo. 150; Mechanics' Bank v. Merchants' Bank, 45 Mo. 513. In what it would be said to conflict with the statute law governing the transfer of personal property, is not easy to be seen. Here is the creation of a peculiar kind of property by the state, by virtue of its incorporation acts, and to say that it cannot attach conditions looking to the better security of creditors regarding the transfer of stock, is to deny it a control which experience is demanding. Nor must it be overlooked that it is not interfering with the disposition of the stock, further than requiring it to be done on conditions. The by-law is held not to be in conflict with the statute law, but proper and reasonable.

The next inquiry is: Was the unpaid subscription conflicting with the case of Hall v. U. S. Ins. Co., 5 Gill, 484, a debt within the meaning of the by-law? The Missouri cases decide that it makes no difference whether the debt is due or to become due, that either fall within the by-law. The difference between the cases cited and the case before the court, is, that they were ordinary debts, such as loans and indorsements, and here it is a balance on stock subscription. This is certainly a debt, and a debt of a very high nature. Justice Miller in the case of Sawyer v. Hoag, 17 Wall. [84 U. S.] 610, speaking of stock subscriptions, and the right of creditors of insolvent corporations to look into and assail the transaction by which defendant claims to have paid it, says: "Though it be a doctrine of modern date, we think it now well established that the capital stock of a corporation, especially its unpaid subscriptions, is a trust fund for the benefit of the general creditors of the corporation. And when we consider the rapid development of corporations as instrumentalities of the commercial and business world in the last four years, with the corresponding necessity of adapting legal principles to the new and varying exigencies of this business, it is no solid objection to such a principle that it is modern for the occasion, for it could no sooner have arisen."

But it is said, and so alleged in the answer, that the by-law was never understood, construed, or intended by the officers or directors of the bank, as prohibiting or preventing the transfer of stock by reason of being indebted on unpaid stock subscription. The answer to this is, that a creditor of an insolvent bank is not bound by what the officers and directors may have understood, or now, after the bank is insolvent, understand, by the by-law. No act of the corporation, as distinguished from acts of its officers, is pleaded to show its understanding, and still, if it were, it is very questionable whether they could thus indirectly be permitted to fritter away a by-law which the law authorized them to make, and which they did make. The allegations of the answer, that the purchasers of the stock were insolvent at the time of making the transfers, may show the prudence of defendant with reference to further liability, but cannot change his obligation as a subscriber of stock. Could the officers of the bank who entered the transfer of the sixty-five shares of the stock to Keefer on the books of the bank, and delivered up the stock notes, waive the by-law regarding the indebtedness to the bank, and thereby make the transfer valid? But for the delivering up of the stock notes, all other acts of theirs could well be construed as not intending to release the original subscriber, for they may have viewed it as getting additional security. Be this as it may, for the want of power in them, their acts are void and of no avail, so far as it affects the liability of this defendant to the bank and its creditors, here represented by the assignee.

A more difficult question, however, arises in case the views expressed as to the argument and transfer of the stock and the powers of the officers of the bank are erroneous, and that is: Can a stockholder, even by the consent of the officers of the bank, discharge the liability of an original stock-subscriber, and undertake to substitute another party in his place, without the stock being paid up when creditors are to be affected? In the case of Sawyer v. Hoag, already cited, it is said that "the governing officers of a corporation cannot, by agreement or other transaction with the stockholder, release the latter from his obligation to pay to the prejudice of its creditors, except by fair and honest dealing and for a valuable consideration." Assuming that the officers of the bank intended to act fairly and honestly, they certainly did not obtain any consideration whatever in the transfer. They seem even to have failed, so far as the pleadings show, to take any obligation of Keefer, whatever, a requirement necessary, according to a number of decided cases, to make the transfer valid. That they acted in violation of the by-law, if it applied to stock-subscription, cannot be doubted. Looking into the nature of the transaction itself, we find a number of subscribers taking stock, all, perhaps (except the first), because of the known ability of co-subscribers to meet their undertakings. In order to avoid having others not known to them substituted in their place, they cause a by-law to be passed that no stock shall be transferred, unless it be done upon the books of the bank and on return of certificate, and no transfer to be made or allowed by a stockholder who at the time is indebted to the bank. Well may the supreme court of Missouri consider this a reasonable by-law; and no less strong is the appeal to this court not to interfere with the security which subscribers for stock have thus provided for themselves and creditors. The stock certificate sets out on its face that transfers must be made in accordance with the by-laws of the bank, so that all parties had notice, and therefore cannot complain if their attempt to violate it is held nugatory and of no avail. Holding original subscribers to stock liable, so far as creditors are concerned, until the whole of the stock subscribed is paid, avoids all conflicts, so far as the various provisions of the statute in reference to collecting dues are concerned, and is on that account to be favored, as well as because it affords the remedy intended when the organization was effected.

In reference to the transferring of stock, the statute, as we have seen, provides that no shares shall be transferred until all previous calls thereon shall have been fully paid up. It is contended that the law limiting the transfer of stock to unpaid calls, the

board had no right by by-law to still further limit it. This is not the view of the supreme court of Missouri in the cases cited. The legislature may well have intended that, so far as calls were concerned, they should, at any rate, be paid in order to afford security to that extent, at least, and to avoid disputes as to who should pay them, leaving any further limitation and security to be provided by the stockholders, which they did in the legitimate exercise of their authority.

The foregoing views apply to the ten shares as well as to the sixty-five shares. But the fact that the transfer of the ten shares was not entered upon the books of the bank, and that the transferee is responsible, calls for an opinion as to the effect of the difference. The by-law, aside from the provision that the assignor shall not be indebted to the bank at the time of making the transfer, also provides that it must be done on the books of the bank. It is not sufficient to have authorized an officer of the bank, by filling up the blank on the back of the certificate. That officer, by virtue of the authority given him, became the agent of the defendant, and not the bank, and if he failed to act, the laches were those of the defendant. The fact that Tobener was the president of the bank, and that the assignment was brought to the notice of the officers of the bank, cannot be substituted for the requirements of the by-law. That Tobener, the assignee, is insolvent, might become a question if the assignor was insolvent, and an attempt was made to collect the balance of unpaid stock on the ten shares of him. An assignee of stock may, no doubt, do such acts as make him liable to the corporation and its creditors, but under the holding, this is not necessary to be determined. The law on the demurrer is with the plaintiff, and the demurrer sustained.