# William Tucker, and others, *vs.* The State, use of Thomas H. Kneighton.

Where demurrers are ruled against the *party appealing*, and the verdict and judgment on the issues are against the *same party*, the appeal from the *final judgment* brings up for review, in this court, the rulings upon the demurrers.

Upon an appeal bond, *conditioned* to prosecute an appeal from a judgment of a justice of the peace to the "*county court* for Anne Arundel county," no recovery can be had, there being, at the time the bond was executed, *no such court in existence.*

Parties are not *estopped* by the recital in a bond, from denying that there was no such court as that recited in existence: whether a court exists or not depends on the constitution or laws, and when this court can see that the supposed tribunal is not known to these, it must so decide, no matter what the parties may have admitted by *estoppel* or agreement.

By *profert* of a bond, and the grant of *oyer* of the bond and condition, they are made part of the declaration.

The appellate court must take judicial notice of the tribunals created by the constitution.

An appeal bond, on which no recovery can be had by the obligee, cannot operate to stay execution of the judgment appealed from.

Appeal from the Circuit Court for Anne Arundel county.

This was an action of *debt*, brought by the *State* on the 22nd of March 1854, upon an *appeal bond*, dated the 24th of

Tucker, *et al.*, *vs.* State, use of Kneighton.

May 1853, in which the appellants, the defendants below, were sureties for Thomas R. Tongue, the principal obligor. This bond was executed to the State, in the penalt of $2000, and they condition is as follows:

"Whereas the above bound Thomas R. Tongue, thinks himself aggrieved by a judgment rendered against him this day, by Stephen L. Lee, esquire, one of the justices of the peace for the said county, at the suit of the said State of Maryland, for the sum of two thousand dollars debt, and eight dollars and seventy-five cents costs, from which judgment the said Thomas R. Tongue is about to appeal to the next *county court* for Anne Arundel county, before *the judges thereof*: Now the condition of the above obligation is such, that if the said Thomas R. Tongue shall not prosecute his appeal at the *county court* for Anne Arundel county, next succeeding the date of this appeal bond, with effect, according to the directions of the act, entitled, An act *for the speedy recovery of small debts* out of court, and to repeal the acts of Assembly therein mentioned, and also pay and satisfy the said State of Maryland, her *executors, administrators or assigns*, in case the said judgment shall be affirmed, as well as the debt, damage and costs, adjudged by the said Stephen L. Lee, as also all costs and damages that shall be awarded by Anne Arundel *county court*, when the said appeal shall be heard, tried and determined, then the above bond to be and remain in full force and virtue, otherwise to be of none effect."

The *declaration* was in the common form, making *profert* of the bond but not setting out the breaches. The defendants craved *oyer* of the bond and condition, which was *granted* them, and they then pleaded *general performance*, to which the State *replied*, that Tongue did not prosecute his appeal with effect. To this replication the defendants *rejoined*:

1st. That the bond was not stamped as required by law.

2nd. That no such judgment as that described in the bond was ever rendered.

3rd. That after the making of the bond, the State, by its release in writing, released to Tongue the forfeiture in the case of the State against Thomas R. Tongue, charged with a

violation of the act of 1836, ch. 150, and its supplements, and tried on said appeal from the judgment of Stephen L. Lee, the justice of the peace, at October term 1853, of the Circuit court for Anne Arundel county, which case was the judgment which should have been referred to in the said bond.

4th. That at the time of the execution of the bond, there was not, nor has there been since, any such county court for Anne Arundel county, before the judges of which Tongue could have prosecuted his appeal.

5th. That the judgment specified in the bond, was not affirmed by the judges of the county court for Anne Arundel county.

6th. That the judgment referred to was a judgment of condemnation, that the vessel of Tongue should be forfeited to the State, which judgment was affirmed by the proper court on appeal, and that Tongue has ever been, and is now, ready and willing to surrender said vessel so condemned to the proper officer of the State, but that the State refuses to receive it, and has released the claim against the same, as appears by the release.

7th. That Tongue did prosecute his appeal with effect, and that the judgment was not affirmed according to the condition of the bond.

The State then filed a *general demurrer* to the 1st, 2nd, 3rd, 4th and 6th counts in the rejoinder, which demurrer the court, (BREWER, J.,) sustained, and the case was then tried before a jury, upon issues joined upon the 5th and 7th counts of the rejoinder.

*Exception.* The defendants to maintain the issues upon their part joined, offered in evidence the original proceedings, upon an appeal taken by Thomas R. Tongue, from a judgment of Stephen L. Lee, a justice of the peace for Anne Arundel county, condemning a vessel of said Tongue, for a violation of the act of 1836, ch. 150, relating to the navigation of vessels by negroes, rendered on the 24th of May 1853. These proceedings consist of the warrant to seize the vessel, purporting to have been issued upon the *information* and oath of *Thomas H. Kneighton*, the return thereto of the seizure

by said Kneighton, constable, the summons to Tongue the owner, the judgment of condemnation, the appeal bond sued on in this case, and the record of the affirmance of the judgment of condemnation by the circuit court for Anne Arundel county. They then called up Stephen L. Lee, and offered to prove by him that these are the proceedings referred to in the appeal bond, and are the only proceedings ever had before him as a justice of the peace, between said parties and the State, and that the appeal bond sued on in this case, was executed and filed by Tongue to stay execution of this judgment. They also offered to prove by the clerk of the circuit court for Anne Arundel county, that these proceedings and bond are the only proceedings and bond in his office, between the parties to this suit. The plaintiff objected to the admissibility of these proceedings, and the testimony of Lee and the clerk so offered to be given, which objection the court sustained. To this ruling the defendants excepted, and the verdict and judgment being against them, appealed.

The transcript of the record, sent up to this court, is endorsed *William Tucker, and others, vs. The State, for the use of Thomas H. Kneighton, for the use of James S. Franklin,* but, in the record itself, the suit appears to have been brought and conducted to final judgment, in the name of the *State* alone.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*Alex. B. Hagner* and *Alex. Randall* for the appellants, argued:

1st. The third and sixth counts of the rejoinder raise the question as to the effect of the release of the forfeiture by the State? The demurrer admits there lease by the State, and we insist that a release by the plaintiff in an action, is a bar to the recovery. The State is the actual plaintiff in this suit; all the pleadings are in her name alone, and are signed by the State's Attorney; there is no entry in the case of a use; the bond and its recitals all mention the State as alone interested, and the

proceedings under the act of 1836, ch. 150, are clearly in the nature of criminal process at the instance of the State. The second section of this act provides, that the vessel "shall be forfeited, or the value thereof, one half to the State and the other half to the informer, to be recovered as hereinafter provided;" and the sixth section gives the right of appeal from the judgment of condemnation by the magistrate, upon the party's "entering into bond to the State of Maryland, with a penalty of twice the value of said vessel." The act does not authorize the informer, or any other person, to institute a suit, in the name of the State, upon this appeal bond, and, in the absence of such authority, no such person can put it in suit. 10 Wheat., 406, Corporation of Washington vs. Young. It is only by special provisions of law that suits can be brought by individuals upon bonds given to the State, and in most of our statutes authorizing such bonds to be given, it is expressly provided that suits may be so brought by individuals. The only exception to this rule is where a consistent and uniform practice to the contrary, for twenty years or more, can be shown to exist. But no such practice can be shown in this case, for the law was only passed in 1836, and this complaint was made in 1853, and is, perhaps, the first attempt to execute it. But, again, the State had the right to release the interest of the informer as well as its own, and its release of the forfeiture extends to the share of the informer. 10 Wheat., 246, United States vs. Morris. 6 Pet., 404, McLane vs. The United States.

2nd. The appeal bond was executed in May 1853, at which time there was no "county court for Anne Arundel county," before the "judges of which" the appeal could have been prosecuted by Tongue. The doctrine of estoppel cannot apply to such errors as these, for they are not stated by way of recital. 1 Greenlf. on Ev., sec. 26. 8 G. & J., 319, Steam Nav. Co., vs. Dandridge. The failure to prosecute in the county court, was a condition precedent to the bond being of any effect, and this condition being impossible, the bond was void, and no recovery can be had upon it. 1 Md. Rep., 135, Manly vs. The State. 10 Md. Rep., 168, Coleman vs. The

*State.* 5 *Md. Rep.*, 503, *Collins vs. Carman.* 1 *Bac. Abr. Title Condition, (M.)* 2 *Thos. Coke*, 26. 1 *Pothier on Obligations*, 101. 1 *Salk.*, 172, *Pullerton vs. Agnew.* 2 *H. & G.*, 82, *Birckhead vs. Saunders.* 5 *H. & J.*, 61, *Morgan vs. Blackiston.* 4 *G. & J.*, 395, *Morgan vs. Morgan.* 1 *H. & J.*, 499, *Johnson vs. Goldsborough.* 12 *How.*, 176, *Bein vs. Heath.* 1 *Scammon*, 568, *Brooks vs. Town of Jacksonville.* 5 *Gilman*, 88, *Sharp vs. Bedell.* 5 *Cowen*, 286, *Ex-parte Weed.* 6 *Cowen*, 585, *Ex-parte Alord.* 2 *Yerger*, 522, *Eason vs. Clark.* 3 *Wend.* 426, *People vs. Monroe Court.* 1 *Brevard*, 3, *Harville vs. Meyers.* 2 *Const. Rep.*, 740, *Darby vs. Hunt.*

3rd. The appeal from the judgment brings the demurrers before this court as well as the ruling upon the exceptions. 1 *Md. Rep.*, 77, *Lawson vs. Snyder.* 4 *Gill*, 163, *Thompson vs. The State.*

4th. That the court erred in excluding the testimony set out in the exception. Under the issues the jury were to find, "that the judgment rendered by Stephen L. Lee, as *specified in the bond*," was affirmed "*by the judges of the county court*" for Anne Arundel county." The testimony offered, showed that the only judgment ever rendered by Lee, between the parties, was averred to be that "*specified in the bond*," and that the "judges of the county court for Anne Arundel county" never could have affirmed it. It was, therefore, relevant to the issue, and should have been submitted to the jury for their consideration. Even if the purpose for which it was offered had not been stated, it would have been error to reject it, if admissible for any purpose. 9 *Gill*, 209, *Taney vs. Bachtell.*

5th. If the court reverse upon either ground, they will not award a *procedendo.* 4 *Gill*, 406, *Stockton vs. Frey.* 4 *G. & J.*, 395, *Morgan vs. Morgan.*

*Jas. S. Franklin* for the appellee, argued:

1st. That there was no error in the ruling of the court, as set out in the exception:—1st. Because all evidence unnecessary and not relevant to the issues, should, on application, be excluded by the court. The evidence offered was not necessary

to the elucidation of the issues on the 5th and 7th counts of the rejoinder, because the recited record of proceedings exhibited the affirmance of the judgment of the justice of the peace, and instead of tending to show a prosecution of the appeal to a successful termination, showed an entire failure so to do.   2nd. It was further unnecessary, because the plaintiff had not offered any evidence or assumed any position tending to show that there had been other proceedings in either court. And 3rd. Even if this ruling were erroneous, this court will not reverse, no injury having been sustained by the appellants, it not appearing for what object the testimony was offered, or could serve, and no announcement made of an intention to follow it up with other proof.   9 *G. & J.*, 439, *Union Bank vs. Planters Bank.*   4 *Md. Rep.*, 429, *Cross vs. Hall.*

2nd. As to the demurrers it is insisted, that after judgment on the same, in favor of the appellee, from which no appeal was taken in the court below, these demurrers are not open for review in this court, the only appeal taken being from the general judgment rendered by the court upon the verdict.   1 *Md. Rep.*, 10, *Milburn vs. The State.*   9 *Gill*, 101, *State vs. Milburn.*

3rd. But if the judgment on the demurrers is open to review, it is insisted there was no error in the ruling of the court upon all or either of them:—1st. Because the defendant was *estopped* from denying the judgment recited in the bond.   4 *Gill*, 191, *Lloyd vs. Burgess.*   2nd. Because the State had no right to release more than her own share, and it was competent for the informer, who, under the act of 1836, ch. 150, was entitled to one-half, to use the name of the State in prosecution of his interest on the bond.   It is not essential that the State should have an interest, in order to sustain an action for the use of a party interested, as in the instance of administration, testamentary and trustees' bonds.   3rd. Because the party is estopped to deny the recitals in the bond, but if not estopped, the *condition* only is void, and the penal points of the bond remain obligatory.   *Hurlstone on Bonds*, in 9 *Law Lib.*, 11, 12.   And 4th. Because if not so estopped, the bond substantively describes the court; the circuit court for Anne

Arundel county is still the court for the county, or the county court, and this court will so construe the condition as to carry out the intention of the parties. *Hurlstone on Bonds*, 18. 8 *Barn. & Cress.*, 299.

Tuck, J., delivered the opinion of this court.

The appeal from the final judgment, authorises this court to review the rulings of the court below on the demurrers. *Lawson vs. Snyder*, 1 *Md., Rep.*, 77, is a case directly in point.

In deciding the issues of law, we are not confined to an examination of the rejoinders to which the plaintiff demurred; but must consider the previous pleadings.

By profert of the bond and the grant of oyer of the bond and condition, they are made parts of the declaration, (*Birckhead vs. Saunders*, 2 *H. & G.*, 82,) looking to which, we see that the same question arises that is presented by the fourth rejoinder.

This court must take judicial notice of the tribunals created by the constitution, and as there was no Anne Arundel county court, and as the parties are not responsible beyond the condition which they have undertaken to perform, it follows, that there was no court before which the appeal could have been prosecuted. If the State, instead of assigning the breach in the short form, as in *Karthaus vs. Owings*, 2 *Gill & Johns.*, 430, had replied, that the judgment appealed from had been affirmed in *the Circuit court for Anne Arundel county*, the court must have held that such a breach was not within the contract declared on by the plaintiff. *Morgan vs. Morgan*, 4 *G. & J.*, 395. And if the replication had shown the affirmance of a judgment of condemnation, under the act of 1836, ch. 150, even in Anne Arundel county court, it would have appeared to be a different judgment from the one recited in the appeal bond, which is a money judgment for two thousand dollars. In either aspect of the obligation, under that form of assigning the breaches, the action must have failed. 2 *H. & G.*, 82. *Morgan vs. Blackiston*, 5 *H. & J.*, 61. If the

42      v. 11

same objection appears on the record in another form of pleading, can the result be different? Surely not.

The principle which we think must govern this case, was established in the cases of *State vs. Manly*, 1 *Md.*, 135, and *Coleman vs. State*, 10 *Md.*, 168. In the first of these, an order was passed removing a prosecution from Baltimore city court to Howard county court, and the traverser was recognised to appear before that court. The record was transmitted to the court of Howard district of Anne Arundel county, to which, doubtless, Baltimore city court designed to have removed the prosecution, but the judge of that court, denying its jurisdiction, refused to forfeit the recognizance, and remitted the record and prisoner to Baltimore city court, which ruling was affirmed; on the ground that, "there being no such court in existence, the order of removal and the recognizance were null and void. And consequently the case was not removed from Baltimore city court, but remained in that court as if there had been no order of removal." In the other case, Coleman recognized before a justice of the peace, to appear at Allegany county court, since the adoption of the present constitution, by which circuit courts were substituted for the county courts. It was held, on appeal, that the recognizance to appear before a court not in existence, was void by reason of the impossibility of complying with its condition. The same doctrine must apply to cases of this kind, the principal obligor having undertaken to perform a condition, which, *under the law*, he could not perform.

It was said in argument, that the defendants are estopped, by the recital in the bond, from denying that there was an Anne Arundel county court. This point might, if tenable, have availed the State in the cases last referred to, but it was not relied upon; nor do we perceive how the doctrine of estoppels can apply. Whether a court exists or not, is something more than a mere question of fact, as to which parties may agree or be concluded by admissions. It must depend on the constitution or laws, and when the court can see that the supposed tribunal is not known to these, it must so decide, no matter what the parties may have admitted by estoppel or

agreement. Besides, the bond does not recite that the party had appealed, but that he was about to appeal to Anne Arundel county court. Now, if he did not enter the appeal, and the declaration, with which alone we are now dealing, discloses nothing on that point, there was no obstacle to have hindered the State from prosecuting the judgment to execution; and, if he did enter the appeal, the right of the State was equally unaffected, because an appeal bond, on which no recovery can be had by the obligee, cannot operate to stay execution. The State might have demanded execution of the judgment, *non obstante* this bond. *Johnson vs. Goldsborough*, 1 *H. & J.*, 499.

The case was provided for by the constitution, but the justice, it seems, made a mistake. The 8th section of article 4, gives to the circuit courts the power, authority and jurisdiction, formerly held and exercised by the county courts. The justice should have taken bond to prosecute the appeal to the circuit court. It may be a hardship on the State or the informer, that such a mistake occurred, but we cannot supply a remedy. As we have said, the State was not bound by the appeal bond as a stay of execution, but might have proceeded on the judgment. These appellants were differently situated, being sureties in an appeal bond, under which their principal was entitled to no benefit whatever, and from which it was impossible to have discharged them by compliance with its condition. The State was not concluded by the bond, and to hold them liable would be to enforce a contract where there was no mutuality. The hardship on them would be apparent, even if the State has allowed herself to be delayed by the appeal.

With these views of the cause of action, as shown by the declaration, we need go no further into the record, as the judgment must be reversed without *a procedendo*. 4 *G. & J.*, 395.

*Judgment reversed.*