529 A.2d 372

Vincent Lane O'DONNELL et al.

v.

Patrick John McGANN, Infant et al.

No. 161, Sept. Term, 1986.

Court of Appeals of Maryland.

Aug. 6, 1987.

Francis J. Ford (Ford & O'Neill, Rockville, Md., on the brief), for appellant Vincent Lane O'Donnell.

Frank J. Vecella (Patricia M. O'Connor, Gregory L. Van Geison and Anderson, Coe & King, Baltimore, Md., on the brief), for appellant Medical Mut. Liability Ins. Society of Maryland.

Albert Brault, Rockville, Md., H. Thomas Howell and Robert Dale Klein, Baltimore, Md., amicus curiae for The Maryland Ass'n of Defense Trial Counsel on the brief.

Judith A. Wood of Baltimore, Md., amicus curiae for The Medical and Chirurgical Faculty of the State of Maryland on the brief.

Gilbert H. Robinette (Henry E. Dugan, Jr. and Robinette, Dugan, Seiden & Jakubowski, P.A., Baltimore, Md. and Walter H. Madden, Rockville, Md., on the brief), for appellees.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH,* McAULIFFE and ADKINS, JJ.

McAULIFFE, Judge.

This appeal involves the nature and extent of the discretionary authority of trial and appellate courts of this State to stay the execution of a money judgment, and more particularly the authority of those courts to approve a

---

* COUCH, J., now retired participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

supersedeas bond in an amount less than the amount of the judgment.

■ We hold that the inherent power of trial and appellate courts to fix the terms and conditions for the stay of execution of judgments has not been circumscribed by rule or statute so as to limit the discretion of the court to modify the penalty of a supersedeas bond required for the stay of execution of a money judgment.

A Montgomery County jury returned a verdict of $5.4 million in favor of Patrick John McGann, a minor, and $100,000 in favor of Terrence and Patricia McGann, his parents, against Vincent Lane O'Donnell. Following hearing of post judgment motions filed by O'Donnell, Judge DeLawrence Beard ordered Patrick's judgment reduced to $2.75 million. O'Donnell appealed to the Court of Special Appeals and the McGanns filed a cross appeal.[1] O'Donnell promptly filed in the circuit court a motion for approval of a supersedeas bond in the amount of $1.15 million, contending that he was unable to post greater security. He alleged that he had insurance coverage of $1 million and total assets in his own name of $14,000, and he filed affidavits and exhibits in support of those allegations.[2] The McGanns opposed the motion arguing that the penalty for a supersedeas bond in a money judgment case was fixed by Maryland

---

1. Ordinarily, a trial judge finding a verdict excessive will grant a defendant's motion for new trial with an option to the plaintiff to avoid retrial by accepting a specified lesser amount, and under those circumstances the right of a plaintiff to appeal the remitted judgment he has accepted may be questioned. *Turner v. Wash. Sanitary Comm.*, 221 Md. 494, 501–05, 158 A.2d 125 (1960). Here, however, the trial judge denied the motion for a new trial but entered an order reducing the verdict. The propriety of that action may be considered in the underlying appeal, in which we have also granted the writ of certiorari, 309 Md. 706, 526 A.2d 610, but is not before us in this case.

2. O'Donnell's liability insurance carrier, Medical Mutual Liability Insurance Society of Maryland (Medical Mutual) sought leave to intervene on the ground that the McGanns had initiated execution proceedings against it in two counties. Intervention was granted over the objection of the McGanns and Medical Mutual has thereafter participated at all levels.

Rule 1018(b)(1) as the full amount of the judgment plus interest and costs and the trial court had no authority to modify it. After a hearing, Judge Beard approved a stay of execution of the entire judgment upon the posting of a supersedeas bond in the amount of $1,427,500.[3] To preserve the status quo, the trial judge also enjoined the transfer of assets by O'Donnell and granted the McGanns a continuing right of discovery relating to any possible transfers of property by O'Donnell subsequent to the date of his affidavit. The McGanns then filed a motion with the Court of Special Appeals asking that the bond be increased to the full amount of the judgment plus interest and costs and again arguing that the rules did not permit any exercise of discretion. Medical Mutual and O'Donnell opposed the motion, contending not only that the trial court had discretion to modify the penalty of the bond but also that the failure to do so under the circumstances of this case would violate their constitutional rights to due process and equal protection. Additionally, Medical Mutual asked that the intermediate appellate court further reduce the bond to $1.15 million based on its belief that the 15% factor should be added to the amount of its coverage rather than to the amount of the judgment. A panel of the Court of Special Appeals heard arguments on the motion and without opinion issued an order fixing the amount of the bond at $3,135,000. We granted the petitions for certiorari filed by Medical Mutual and O'Donnell, and stayed the effect of the order issued by the Court of Special Appeals.

Although our decision turns on an interpretation of the Maryland Rules of Procedure, and particularly the interac-

---

3. The usual practice of the Clerk of the Circuit Court for Montgomery County in fixing the penalty of a supersedeas bond is to add 15% of the amount of the judgment to cover interest and costs. Apparently satisfied that Medical Mutual would be obligated to pay interest on the full amount of the judgment if unsuccessful on appeal, the trial judge added 15% of the total judgment to the $1 million face amount of the policy to arrive at the figure of $1,427,500. The court also permitted Medical Mutual to pay this amount into the registry of court in lieu of posting a bond.

tion of Chapter 400 of Title 1 with Rule 1018(b)(1), a brief overview of the problem and review of the history of the involved rules is in order.

■ The practice of requiring security for a stay of execution of a judgment at law during the pendency of an appeal is deeply rooted, and no doubt evolved from the consideration of security as a condition for the granting of a discretionary writ of error or appeal. We are persuaded that the latitude afforded trial judges in fixing security in discretionary appeal cases carried over to the determination of the amount and terms of security required for a stay of execution when the right of appeal became absolute. The United States Supreme Court has referred to "the inherent power of the appellate court to stay or supersede proceedings on appeal." *In re McKenzie*, 180 U.S. 536, 551, 21 S.Ct. 468, 474, 45 L.Ed. 657 (1901). Judge Metzner of the United States District Court for the Southern District of New York opined that "the [trial] court has the inherent power in extraordinary circumstances to provide for the form and amount of security for a stay pending appeal, based on the condition it finds to exist in a particular case." *Trans World Airlines, Inc. v. Hughes*, 314 F.Supp. 94, 96 (1970) (approved in material part at 515 F.2d 173, 177–78 (2d Cir.1975), *cert. denied*, 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976)). *See also Fed. Presc. Serv. v. Am. Pharm. Ass'n*, 636 F.2d 755, 759–60 (D.C.Cir.1980). In an early appeal from the Court of Chancery, our predecessors said:

[I]t is manifestly necessary, to the ends of justice, that there should be a power in special cases to suspend proceedings on the matter appealed from; therefore in adopting the rule, that an appeal does not stay proceedings, we adopt it with its necessary incidents, which are, that pending the appeal, proceedings may be stayed either by order of the Chancellor, on application made to him for that purpose, or by a special order of this Court, on such terms as the peculiar circumstances of each

particular case may be found to require. *Thompson v. M'Kim,* 6 H. & J. 302, 333 (1825).

Initially by custom, but in any event by legislation in this State as early as the enactment of ch. 4 of the Acts of 1713, the practice of the common law courts was to require a supersedeas bond in double the amount of the judgment. *Thompson, supra,* 6 H. & J. at 332; *Johnson v. Goldsborough,* 1 H. & J. 499 (1804). This rather stringent legislative requirement of double bond was later made applicable to decrees in equity as well as judgments at law, and remained applicable to the courts of general jurisdiction until 1957, and to the courts of limited jurisdiction until 1972.[4] The legislative mandate of double bond was absolute until 1937 when ch. 36, § 1 of the Laws of that year was enacted, providing:

> In any case where, pursuant to statute, rule of court, decree, or otherwise, a bond has heretofore been or shall hereafter be filed in any Court of this State, the Court (or any Judge presiding in said Court) may, in its discretion, reduce the penalty of such bond whenever it deems such reduction justified by all the circumstances of the case.

That law, initially codified at Art. 26, § 13, remained unchanged until 1957 when by § 14 of ch. 399 it was amended to specifically exclude its application to supersedeas bonds of the type involved in this case. The section, then codified at Art. 26, § 16, is set forth with the 1957 amendment shown in italics:

> In any case where pursuant to statute, rule of court, decree, or otherwise, *except pursuant to Rule 818(b) of the Rules of Practice and Procedure approved and*

---

**4.** The requirement of double bond applicable to courts of general jurisdiction was last codified at Art. 5, § 57, and was repealed by ch. 399 of the Acts of 1957 when Art. 5 was re-written to accommodate the substantial revision of the rules which became effective that year. The legislative provision applicable to the courts of limited jurisdiction was last codified at Art. 5, § 36, and was repealed by ch. 181 of the Acts of 1972 as a result of the creation of the District Court of Maryland in 1971 and the adoption of Chapter 1300 of the Maryland Rules dealing with appeals from the District Court.

*adopted by the Court of Appeals of Maryland to take effect on January 1, 1957,* a bond has heretofore been or shall hereafter be filed in any Court in this State, the Court (or any Judge presiding in said Court) may, in its discretion, reduce the penalty of such bond whenever it deems such reduction justified by all the circumstances of the case.

Rule 818 dealt with the form and penalty of supersedeas bonds. Rule 818(b)(1) provided then, as does Rule 1018(b)(1) now, that:

When the judgment is for the recovery of money not otherwise secured, the amount of the bond shall be for such sum as will cover the whole amount of the judgment remaining unsatisfied, interest, and costs.

Without question the 1957 amendment had the effect of precluding trial judges from reducing the penalty of the limited class of supersedeas bonds embraced by Rule 818(b). An important change occurred, however, when certain general provisions with respect to bonds were incorporated into the Maryland Rules of Procedure and deleted from the Maryland Code. The new bond rules were collected at Subtitle H of Chapter 1100 of the Rules, and Rule H4(a) became the immediate successor to § 16 of Art. 26.[5] Significant in the context of this case is the fact that in the metamorphosis from statute to rule the exception clause that had been added in 1957 was deleted, and the broad discretion of the earlier section reinstated. Rule H4(a) provided very simply that:

The court may at any time, for good cause shown, order the penalty of a bond to be increased or reduced.

Rule H4(a) was clearly applicable to supersedeas bonds. Rule H1 provided that "[r]ules H1 to H8 are applicable to a bond required to be filed in any action." Additionally, a cross reference incorporated at the time of the adoption of the H rules stated that "[t]he following rules contain other

---

5. The Subtitle H Rules became effective January 1, 1962. Section 16 of Art. 26 was repealed by ch. 36, § 1 of the Acts of 1962.

provisions applicable to judicial bonds" and specifically included Rule 818 and other rules dealing with supersedeas bonds. Furthermore, Rule H3(a), permitting a deposit of money in lieu of a bond, contained an explicit reference to supersedeas bonds.

In the reorganization of the Maryland Rules in 1984 the general rules pertaining to bonds were moved to ch. 400 of Title 1 and certain style changes were accomplished, but no changes of substance were made to any of the bond rules we have discussed. Rule 1–401 succeeds Rule H1, and provides that "[t]his chapter applies to any bond filed in a civil action." Rule 1–402(d) is the successor to Rule H4(a) and provides in pertinent part that "[a]t any time for good cause shown, the court may require an increase or decrease in the face amount of a bond."

Respondents do not suggest that the bond rules of Title 1 are inapplicable to supersedeas bonds. Indeed, the plain language of Rule 1–401 precludes any such argument. Rather, Respondents suggest, the general authority granted by Rule 1–402(d) to increase or decrease the penalty of bonds should yield to the specific direction of Rule 1018(b)(1) that the amount of the bond "shall be such sum as will cover the whole amount of the judgment remaining unsatisfied, interest, and costs."

In interpreting and reconciling rules of procedure this Court employs the same standards as are used for interpreting statutes. *In re Leslie M.,* 305 Md. 477, 481, 505 A.2d 504 (1986); *Pappas v. Pappas,* 287 Md. 455, 465, 413 A.2d 549 (1980). Related court rules, like statutes, will be construed to harmonize with each other and not to produce unreasonable results. *Equitable Life Assurance v. Jalowsky,* 306 Md. 257, 263, 508 A.2d 137 (1986); *Leslie M., supra,* 305 Md. at 481.

As noted above, Petitioners have argued that an inflexible rule fixing the penalty of a supersedeas bond in an amount they are financially unable to meet would violate their constitutional rights. Without advancing an opinion

on the constitutional argument, we note that it has proven attractive to at least one other court, *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133 (2d Cir.1986), *rev'd on other grounds, Pennzoil Co. v. Texaco, Inc.*, —— U.S. ——, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), and we therefore restate the familiar principle that a rule will be construed to avoid a possible conflict with the Constitution whenever that course is reasonable. *Davis v. State*, 294 Md. 370, 377, 451 A.2d 107 (1982); *Williams and Fulwood v. Director*, 276 Md. 272, 295, 347 A.2d 179 (1975), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2178, 48 L.Ed.2d 801 (1976).

We also find of assistance the experience of the federal courts in construing their rules regarding supersedeas bonds. The federal procedures in this area are governed by Fed.R.Civ.P. 62(d) and Fed.R.App.P. 8. Although the Federal Rules do not suggest a specific penalty for any type of supersedeas bond, and thus the federal courts have not been confronted with the precise problem that is before us, their experience with an analogous problem is helpful. Federal Rule of Civil Procedure 62(d) provides that "[w]hen an appeal is taken the appellant by giving a supersedeas bond may obtain a stay ..." and "[t]he stay is effective when the supersedeas bond is approved by the court." Under this rule the question has arisen whether a court has the discretion to grant a stay without requiring a supersedeas bond. Additionally, because the Federal Rules are silent on the question of the penalty of bond to be established in various types of cases, federal courts have been required to review the history of discretion in that area. The majority of cases have held that Fed.R.Civ.P. 62(d) must be read so as to permit a stay upon appeal without the necessity of posting a supersedeas bond in extraordinary cases. A common thread running through the representative federal cases is the history of, and need for, flexibility in the determination by trial courts of the nature and extent of security reasonably required for a stay of execution pending appeal. *See, e.g., Olympia Equipment v. Western Union Telegraph Co.*, 786 F.2d 794 (7th Cir.1986); *Fed. Presc. Serv. v. Am.*

*Pharm. Ass'n,* 636 F.2d 755 (D.C.Cir.1980); *Poplar Grove, etc. v. Bache Halsey Stuart, Inc.,* 600 F.2d 1189 (5th Cir.1979); *C. Albert Sauter Co., Inc. v. Richard S. Sauter Co., Inc.,* 368 F.Supp. 501 (E.D.Pa.1973); *Trans World Airlines, Inc. v. Hughes, supra.*

■ We agree that some flexibility is desirable to accommodate the needs of the extraordinary case. As previously indicated, inherent authority exists in both the trial and appellate courts to establish the terms and conditions of any stay pending appeal, and the proper focus of the inquiry is whether that broad discretion has been circumscribed by statute or rule. As Respondents concede, the discretion is preserved to the appellate courts by Rule 2–632(f), which instructs:

The provisions of this Rule do not limit any power of an appellate court to stay proceedings during the pendency of an appeal or to suspend, modify, restore, or grant an injunction during the pendency of an appeal or to make any order appropriate to preserve the status quo or the effectiveness of the judgment subsequently to be entered.

Although Rule 1018(b)(1) standing alone might be read as Respondents suggest, we believe that it must be read and considered in conjunction with the clear language of Rule 1–402(d) and in light of the history, purpose and function of both rules. When so read, Rule 1018(b)(1) fixes the penalty of the supersedeas bond in the ordinary money judgment case but Rule 1–402(d) reserves to the trial court the discretion to increase or decrease the face amount of that bond in an extraordinary case.

■ While it may be an unusual case in which the facts and circumstances justify increasing or decreasing the penalty of a bond initially fixed by the provisions of Rule 1018(b)(1), it is important to note, particularly in this era of multimillion dollar judgments, that the authority does exist. Where a party believes that extraordinary facts and circumstances exist to justify the exercise of this discretion, application should first be made to the trial court. The opposing

party must be given notice and an opportunity to respond, but the proceedings will often be summary in character, with the parties supplying necessary facts by means of affidavits. Where essential facts are in dispute, testimony may be required. The moving party will have the burden of objectively demonstrating the reasons for a departure from the general requirement of a full security supersedeas bond, as well as the burden of presenting a plan reasonably calculated to preserve the status quo during the pendency of the appeal. *See Poplar Grove, supra.*

■ In the instant case, Respondents presented no significant challenge to O'Donnell's assertion that he was financially unable to procure a supersedeas bond in the full amount of the judgment, interest and costs.[6] The trial judge was justified in finding that the face amount of the Medical Mutual policy was $1 million and that Medical Mutual could not be expected to post a bond in excess of the face amount of its policy plus interest on the judgment and costs. Judge Beard had the authority to impose a limited stay, i.e. to stay the execution of the judgment only as to Medical Mutual upon its posting a supersedeas bond in the amount of its policy together with estimated interest and costs. *See Merritt v. J.A. Stafford Company,* 68 Cal.2d 619, 68 Cal.Rptr. 447, 440 P.2d 927, 931–32 (1968). We cannot say, however, that the trial judge was limited to that course of action nor do we express an opinion as to whether such limited relief would have violated O'Donnell's constitutional rights. Apparently having been persuaded of the limited assets of O'Donnell and of the efficacy of an injunction to ensure that Respondents would find themselves in no worse position at the conclusion of the appellate process, Judge Beard ordered a stay of the entire judgment upon the combination of those terms and conditions, and we cannot say that he abused his discretion in so doing.

---

**6.** Testimony was offered that a supersedeas bond could not be obtained without the posting of 100% collateral.

**354**

*ORDER OF THE COURT OF SPECIAL APPEALS MODIFYING THE TERMS AND CONDITIONS OF THE SUPERSEDEAS BOND ESTABLISHED BY THE CIRCUIT COURT FOR MONTGOMERY COUNTY VACATED; ORDER OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REINSTATED; COSTS TO BE PAID BY RESPONDENTS.*